# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DONNY PHILLIPS,

      Plaintiff,

v.

JULIE JONES, as Secretary of the Florida
Department of Corrections, CORIZON, LLC,
and CENTURION OF FLORIDA, health
services corporations, CRUZ PAGAN
DELGADO, M.D., SARA BROCK GREEN,
RN, GLENWOOD COBB, RN, LUCY
FRANKLIN, LPN, LINDA CORT, LPN, and
LABRIDIA GREGORY, individually,

      Defendants.

Case No. 4:18-cv-139

## COMPLAINT

Plaintiff sues defendants and alleges:

### Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343.

2. Plaintiff's federal claims are predicated upon 42 U.S.C. §§ 1983 and 1988.

3. Plaintiff's claim is also predicated upon the Americans with Disabilities Act,
   42 U.S.C. §§ 12131 and 12133, and § 504 of the Rehabilitation Act.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202 and Fed.R.Civ.P.
   57, and injunctive relief is authorized by Fed.R.Civ.P. 65.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

6. All conditions precedent to this lawsuit have been satisfied or waived.

## Parties

7.   At all times material hereto, DONNY PHILLIPS was an inmate in the care and custody of the Florida Department of Corrections ("FDC").

8.   At all times material hereto, Defendant JULIE JONES, was Secretary of the Florida Department of Corrections, a Florida state agency.

9.   At all times material hereto, CORIZON LLC ("Corizon") and CENTURION OF FLORIDA, LLC ("Centurion"), each in their turn, were health care companies contracted with FDC to provide care to prison inmates.

10.  At all times material hereto, Defendant CRUZ PAGAN DELGADO, was a medical doctor and Chief Health Officer at Franklin Correctional Institution.

11.  At all times material hereto, Defendant SARA BROCK GREEN, was a registered nurse and Nursing Director at Franklin Correctional Institution.

12.  At all times material hereto, Defendant LINDA CORT, was a licensed practical nurse and ADA Coordinator at Franklin Correctional Institution.

13.  At all times material hereto, Defendant LUCY ANN FRANKLIN, was a licensed practical nurse at Franklin Correctional Institution.

14.  At all times material hereto, Defendant GLENWOOD BROOKS COBB, JR, was Health Services Administrator at Franklin Correctional Institution.

15.  At all times material hereto, Officer LABRIDIA B. GREGORY was a corrections officer at Franklin Correctional Institution.

## Common Allegations of Fact

16. On November 21, 2013, Donny R. Phillips (Phillips) was placed in the care and custody of the Florida Department of Corrections (FDC).

17. Phillips is an elderly man confined to a wheelchair due to a spinal injury.

18. Phillips has a heart condition, kidney failure, blood clots in both his legs and requires medications and special consideration for those conditions.

19. Phillips' kidney condition and medication require him to drink more water.

20. Phillips also has a medical condition which causes incontinence of bladder and bowel, forcing him to wear adult diapers (Depends).

21. Phillips is also a person with a disability for purposes of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973.

22. As such, Phillips requires accommodations for mobility and personal hygiene.

23. Phillips' spinal injury affected his ability to feel that his bladder is full, which means that he sometimes has to urinate on very short notice.

24. Phillips is wheel chair bound although he can extend his mobility through therapeutic assistive devices, including therapeutic boots.

25. Phillips also requires frequent changes of adult diapers to function at the institution, in order to participate in chow and various activities.

26. Phillips also requires frequent changes of adult diapers to avoid periodic open sores caused by urine burns from having to spend hours in wet diapers.

**A. Denial of Accommodations and Care by Staff at Mayo CI**

27.  From the time he entered the Florida Department of Corrections, Phillips had trouble getting his medical and ADA needs met.

28.  Medical care at that time was provided by Corizon, LLC, which had a custom and practice in Florida of delay and denial of care to increase its profits.

29.  During 2015, Phillips, while housed at Mayo Correctional Institution (Mayo CI), began to have increasing trouble getting adult diapers (Depends).

30.  His supplies of sanitary wipes, soap, and ointments were often interrupted.

31.  Because Phillips frequently had an urgent need to urinate on short notice, he repeatedly requested but was denied a bathroom pass and urinal jug.

32.  The formal denial reasoned that since Phillips had Depends, he did not need a bathroom pass and that he can simply urinate or defecate in the Depends.

33.  However, Phillips only intermittently received the number of Depends that he needs and regularly found himself without a clean undergarment.

34.  When Phillips has no clean adult diaper, he must remain in the dormitory.

35.  Hours or days in sopping diapers also result in open sores from urine burns that are prone to infection, especially for one also incontinent of bowel.

36.  Phillips responded to the failure to provide care with grievances and a lawsuit.

37.  An inmate who regularly files grievances and lawsuits is called a "writ-writer" in the parlance of FDC security, medical, and administrative staff.

38.   A known "writ-writer" becomes a "target inmate."

39.   Writ-writers make up a large number of inmates in confinement and frequently have problems getting medical and security needs addressed.

40.   Phillips was threatened, harassed, and taunted by Mayo security staff.

41.   Phillips was subjected to manhandling by Mayo security staff.

42.   On February 18, 2016, Plaintiff was sent to confinement on a pretext as retaliation for filing grievances and lawsuit complaints.

43.   While confined, Phillips was kept in a non-ADA compliant cell.

### B. Denial of Accommodations and Care by Staff at Franklin CI

44.   On or about February 24, 2016, Phillips was transferred to Franklin Correctional Institution (Franklin C.I.) to a confinement dormitory.

45.   Once again, Phillips was held in a non-ADA compliant cell.

46.   Phillips was told by security and medical staff that he would receive better treatment only if he stopped writing grievances and lawsuit complaints.

47.   Beginning at Mayo C.I. and continuing to Franklin C.I., security staff has openly threatened Phillips with physical harm as a result of his complaints.

48.   Phillips has also been humiliated by Security in front of other inmates.

49.   Humiliation in front of peers has the additional effect of marking an inmate as an easy target for inmate predators who know he won't be protected.

50.   A target inmate may also be exploited by inmate staff.

51.   Inmate orderlies serving food may keep items from the target inmate's tray or extort the inmate's personal property through threats to contaminate food.

52.   Inmate library clerks who make copies may share legal materials with security staff or alert them that they are going to be named in a lawsuit.

53.   Security staff may block access to medical care by forging "refusals of care" or detaining inmates headed for medical call-outs.

54.   As Phillips tried to get needed care, he was repeatedly reminded by staff that he was being punished for filing a lawsuit and grievances.

55.   Phillips has been told by Defendant Nurses Linda Cort and Lucy Franklin to wait in medical for hours only to have them tell him after a long wait that he will not be seen, which forces him to wet his Depends and miss chow.

### C. Failure to Accommodate Plaintiff's Sanitation Needs

56.   Phillips has used adult diapers (Depends) in prison since 2005 at Tomoka Correctional Institution, South Bay Correctional Institution; Central Florida Reception Center; prior to coming to Mayo C.I. and Franklin C.I.

57.   Beginning at Mayo C.I. and continuing at Franklin C.I., prison staff frequently refused to provide Depends to Phillips or reduced the number.

58.   On or about March 11, 2016, Franklin C.I. Chief Health Officer Cruz Pagan, agreed Phillips could have one package of Depends a week (three per day).

59.   Nevertheless, in April, ADA Coordinator, Defendant Cort prevailed on Dr.

Pagan to cut the order to one package per two weeks.

60. Instead, Cort ordered Phillips to use a condom-type catheter.

61. The catheter was re-usable rather than single-use, yet Phillips was given no effective way to make them sanitary after contamination occurred.

62. Phillips told Cort the ill-fitting catheter didn't work because it leaked and would come off while he was asleep so he woke up in a pool of urine.

63. In April, 2016, Cort tried to make Phillips sign a "refusal" of the catheter program that was also worded to "refuse" adult diapers.

64. In May 2017, the Corizon contract was terminated and medical care began to be provided by Centurion of Florida with essentially the same staff.

65. On July 11, 2016, Phillips was told that Dr. Pagan decided to change the Depends order back to one package a week as he originally prescribed.

66. Phillips grieved Nurse Cort's efforts to disrupt his Depends supplies and was told it was dealt with however there was no change in her behavior.

67. Security would sometimes refuse to allow Phillips access to the medical department for his supplies, requiring him to wear wet diapers overnight.

68. Phillips has also been routinely deprived of medicated soap and ointment to deal with the urine rash and forced to pay a sick call fee even to request it.

69. Phillips has also been deprived of needed fiber laxative and sanitary wipes which helped him to manage the health dangers of his incontinence.

70.   Phillips has had to attend multiple sick calls and file multiple grievances to
      receive even a limited quantity of ointment, sanitary wipes, or soap.

71.   ADA Coordinator Nurse Cort told Phillips he could not have any sanitary
      wipes unless he cooperated with her ineffective catheter program.

72.   Cort told Phillips he would have to use toilet paper instead of wipes and if he
      had no toilet paper, use a washcloth which created another bio-hazard issue.

73.   When Phillips is forced to wear urine-soaked diapers for extended periods,
      urine burns cause sores that can allow infection from fecal bacteria.

74.   As of May 2017, Phillips reported having permanent discoloring in his groin
      from the constant urine burns and bleeding rashes or sores.

75.   On July 16, 2016, Officer LaBridia Gregory denied Phillips a shower to clean
      himself after an accident, forcing him to remain in his own feces.

76.   Phillips has been systematically denied basic sanitation needs including adult
      diapers, antiseptic supplies, a bathroom pass, and shower accommodations.

77.   ADA inmates at Franklin C.I. shower in a poorly designed stall which grants
      other inmates in the dorm a view of them as they shower or change in the stall.

78.   Vulnerability caused by visibly showering as a disabled person can make an
      inmate a target for sexual predators within the facility, regardless of age.

79.   ADA inmates are supposed to be allowed a portable privacy curtain which
      gives ADA inmates the same privacy as non-ADA inmates.

80. Phillips is denied use of the curtain by officers who keep it locked up.

81. Phillips was told he must wait until 4 PM to be able to request the curtain from the officer in his dorm who can grant or refuse the curtain at whim.

82. Phillips sometimes waits the duration of an officer's shift for the curtain.

83. Phillips is regularly denied shower curtains by officers who lock them away and wait out their shift so that they keep Phillips from receiving them.

84. Plaintiff has previously gone over 48 hours without the ability to shower because they would not make the curtains available to him.

85. Staff often stab holes in Phillips' package of Depends before he gets them to punish him for writing grievances and filing lawsuits.

86. The ruined Depends then leak urine and fecal matter onto his clothing.

87. Defendant Health Services Administrator (HAS) Cobb supported and defended the practice of perforating his Depends, saying it was staff policy.

### D. Failure to Accommodate Plaintiff's Mobility Needs

88. Phillips has periodically been deprived of an aide to assist in mobility.

89. Phillips was long denied a wheelchair aide or even gloves to prevent blisters when he is forced to wheel himself long distances quickly without help.

90. Phillips is often required to go from dorm to medical to chow in a short time.

91. Phillips' difficulty in propelling his wheelchair requires him to miss chow as movement becomes exhausting, putting him at risk for another heart attack.

92.   On April 30, 2016, Phillips was disciplined for letting someone push his wheelchair although, without help, he frequently has to miss chow.

93.   In December of 2016, Phillips experienced severe shoulder pain.

94.   Shoulder x-rays showed severe arthritis, which was likely the result of regularly wheeling his chair long distances from dorm to medical to chow.

95.   Phillips asked Dr. Pagan repeatedly for an aide to push his wheelchair.

96.   Pagan refused, telling Phillips he'd have to go through ADA Coordinator Cort though he was aware she had been denying Phillips a wheelchair aide.

97.   Finally, on December 28, 2016, nearly a year after arriving at Franklin C.I., Cort finally told Phillips that he could have a wheel chair aide.

98.   After Phillips got a "wheel chair pusher" aid, Officer Gregory would send his aide back to the dorm so Phillips would have to leave and miss chow.

99.   Defendant Gregory has flatly told Phillips that she will continue to interfere with his having the assistance of an aide because he is a "writ-writer."

100.   Gregory often denies Phillips access to the wheelchair accessible shower or denies him the privacy curtain that ADA inmates use to shower.

101.   Phillips had therapeutic boots when he was at Mayo C.I. but these had been taken from his property when he got to Franklin C.I. and thrown away.

102.   Although Phillips had a pass for the boots, ADA Coordinator Cort told him he would not be provided new therapeutic boots despite the pass.

103. With the therapeutic boots, Phillips could achieve some mobility with various kinds of assistive devices and regain some balance and muscle tone.

104. Without the therapeutic boots and other assistive devices, Phillips is wheel chair bound and deprived of opportunities presented by better mobility.

105. Although FDC has a statewide Americans with Disabilities Act (ADA) program, individual institutions can deny reasonable accommodations at will.

106. Health Services Administrator Glenwood Cobb told Phillips that it was up to each institution whether to accommodate his disabilities or not.

107. Mr. Phillips is a large man and needs a large-size wheel chair.

108. Though new wheel chairs arrived September 17, 2016 Phillips was forced to use an old, broken and dangerous wheelchair for 4 months, from September 7 to December 16, despite speaking with staff and filing many grievances.

109. In November, 2016, Defendants Nursing Director (DO) Green and HSA Cobb refused to give Phillips a wheelchair to fit his size.

110. Defendant Green told Phillips that if he would "stop writing grievances," he might receive a wheel chair appropriate to his larger build.

111. After Phillips complained that he had not received a larger chair, Cort taunted him that they would not give him a "big boy chair."

112. On occasion, Cort has threatened to have Phillips placed in confinement as a result of his complaints about failure to accommodate his disabilities.

113.   Staff denial of care places Phillips in danger of death by septic shock.

**E. Staff Deprives Plaintiff of Prescribed and Needed Health Care**

114.   Phillips must depend on medical staff to order and provide medication.

115.   Medical staff are aware of his serious medical conditions and needs.

116.   On February 15, 2016, Phillips was denied his blood-clot medication.

117.   On March 21, 2016, Phillips' monthly blood draw that is required to check the likelihood of potentially fatal blood clots in his legs was disrupted.

118.   Phillips had received cholesterol medication for the 30 months before getting to Franklin C.I., but then his cholesterol medication was suddenly stopped.

119.   In April or May, 2016, Franklin Chief Health Officer, Cruz Pagan agreed to re-start his cholesterol medication but failed to check that Phillips got it.

120.   On July 19, 2016, Dr. Pagan noted Phillips cholesterol level was at 233.

121.   Phillips explained that he had never received the cholesterol medication.

122.   Dr. Pagan said he had re-written the order on July 11, 2016.

123.   Dr. Pagan's order for medication was apparently ignored.

124.   Dr. Pagan did not discipline his staff for failure to follow his prescription.

125.   Phillips frequently fails to receive prescribed medications and supplies.

126.   Phillips has been forced to wait weeks for medical supplies that "ran out."

127.   Medical Staff regularly ignores Phillip's need for medical supplies such as soaps, medical wipes, and ointments as a form of retaliation.

128.  Phillips is forced to use scarce resources on co-pays for chronic problems.

129.  Phillips has been assessed a sick call co-pay to even request needed supplies.

130.  On July 27, 2017 Officer Gregory detained Phillips and his wheelchair aide at the center gate for 30 minutes while he was going to get his medication.

131.  Phillips warned Gregory this would force the Plaintiff to urinate himself and go back to his cell to clean himself up, which is what happened.

132.  Officer Gregory then documented this incident as a "refusal of medication."

133.  Security and medical staff at Franklin C.I. frequently treat denials of medication as "refusals" of medication and write on forms, "refused to sign."

### Causes of Action

### I.  Failure to Treat under 42 U.S.C. § 1983 (Jones, Injunctive Relief)

134.  Phillips is entitled to declaratory and injunctive relief against Defendant Julie Jones, in her official capacity, for a systemic failure, through her agents and employees ("staff") to treat Phillips known serious medical conditions in violation of the Eighth Amendment to the U.S. Constitution, as further set out in Sections A-E of the Common Allegations of Fact, and as follows:

   a.  Phillips is intermittently denied care, including critically-needed medications and testing such as blood-clot medication, periodic checks of possible blood clots in his legs, and cholesterol medication, but is promised he will receive better care if he stops writing grievances.

   b.  Phillips is sometimes forced to wait hours for medical staff who don't see him, wait weeks for medical supplies that "run out," and assessed a co-pay to even request or check on overdue medical supplies.

c. Medical staff countermand or ignore Phillips' prescriptions, deprive him of ointments, soaps, and medical wipes in retaliation for his grievances and deny him reasonable ADA accommodations without fear of discipline.

d. Staff deny Phillips an adequate supply of adult diapers and sometimes perforate the diapers as a matter of policy or practice.

e. Medical staff withhold medical supplies from Phillips under the premise that the supplies have "run out" when they have not. Medical staff are not disciplined for engaging in said behavior.

f. Security staff deny Phillips access to the shower to clean himself after an accident forcing him to remain in his own feces and deny him the use of a privacy screen for showering for up to 36 hours.

g. Staff fails to provide sanitary wipes for Phillips and tells him he will have to use toilet paper or a washcloth instead of Sanitary wipes, which creates a dangerous bio-hazard issue given the frequency of his need.

h. Phillips is deprived of fiber laxative which he needs to manage his bowel movements and reduce the health dangers of his incontinence, including sudden loss of bowel control while on the compound.

i. Staff sometimes denies Phillips Depends and sanitary wipes to force him to use a re-usable condom-type catheter that leaks urine, and that he was provided no means to sterilize when it becomes contaminated.

j. Staff misuse the "refusal" process, frequently denying Phillips care and documenting the denial as a "refusal." Staff forced Phillips to sign a "refusal" of the catheter program which was altered to say that by refusing the catheter system, he also refused future supplies of adult diapers.

k. As a result of denial of hygiene supplies, Phillips is forced to wear urine-soaked diapers for long periods, resulting in breaches of his skin integrity that can allow infection from fecal bacteria and septic shock.

135. Jones has a non-delegable duty to provide Phillips with needed medical care and to protect him from known dangers of serious harm.

136. As a proximate result of Defendant's denial of care, Phillips has suffered

significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

137.   As it was necessary for Phillips to retain the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## II. Failure to Treat under 42 U.S.C. § 1983 (Corizon)

138.   Phillips is entitled to relief against Corizon for systemic failure to treat known serious medical conditions in violation of the Eighth Amendment as further set out in Sections A-E of the Common Allegations above, and as follows:

a.   Corizon, which was responsible for Phillips' medical care from late 2013 to May 2016, has a nationwide corporate policy to provide prisoners with as little care as possible as late as possible in order to maximize profits.

b.   Because Corizon encouraged its employees to minimize health care cost even when it put prisoners at risk, medical staff felt free to deny care.

c.   Corizon denied Phillips critically-needed blood-clot medication, periodic checks of possible blood clots in his legs, and cholesterol medication as part of a policy to reduce and eliminate medications as well as deny them.

d.   Corizon had a practice of short-staffing medical positions so Phillips would sometimes be called for a medical appointment, forced to wait hours, then sent away without having been allowed to actually see anyone.

e.   Corizon had a practice of allowing prescribed medications and medical supplies to completely run out before re-ordering them so that Phillips would suffer interruptions in medications and sanitation supplies.

f.   Corizon had a practice of ordering fewer medical supplies than were actually needed for effective care and made no effort to expedite resupply.

g.   Corizon had a practice of having staff deny care and then fabricate a "refusal of care" in the name of the inmate and writing in "refused to sign"

where the inmate's signature should be.

h. Corizon had a practice of under-paying medical doctors but permitting them to work short hours so that they were rarely available to inmates.

139. As a proximate result of Defendant's denial of care, Phillips has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

140. As it was necessary for Phillips to retain the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## III.    Failure to Treat under 42 U.S.C. § 1983 (Centurion)

141. Phillips is entitled to relief against Defendant Centurion for a systemic failure to treat known serious medical conditions in violation of the Eighth Amendment to the U.S. Constitution, as further set out in Sections B-E of the Common Allegations, above.

142. Centurion took over the contract for prisoner health care from Corizon, hired most of the Corizon staff, and continued Corizon's denial and delay of care.

143. Centurion has failed to provide medical care as follows:

a. Centurion has continued the Corizon policy of denying and delaying health care to prisoners – as little care as possible, as late as possible.

b. Centurion, which was responsible for Phillips' medical care from May 23, 2016 to the present, has a national corporate policy to provide prisoners as little care as possible as late as possible in order to maximize profits.

c. Because Centurion encourages employees to minimize health care cost

even when it put prisoners at risk, medical staff felt free to deny care.

    d.  Centurion short-staffs medical positions so Phillips is sometimes called for a medical appointment, forced to wait hours, then sent away without care.

    e.  Centurion has a practice of denying care then fabricating a "refusal of care," writing "refused to sign" where the inmate's signature should be.

    f.  Centurion fails to discipline medical staff for withholding medical care.

    g.  Centurion has a practice of under-paying medical doctors but permitting them to work short hours so they are rarely available to inmates.

144.  As a proximate result of Defendant's denial of care, Phillips has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

145.  As it was necessary for Phillips to hire the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

    WHEREFORE, Plaintiff seeks relief as noted below.

### IV.    Failure to Treat under 42 U.S.C. § 1983 (Pagan, Green, Cobb)

146.  Phillips is entitled to relief against Defendants Cruz Pagan, Sara Green, and Glenwood Cobb, for failure to treat known serious medical conditions, or interference with such treatment in violation of the Eighth Amendment to the U.S. Constitution, as further described in Sections B-E of the Common Allegations, above, and the following:

    a.  Pagan denied Phillips a bathroom (frequent urination) pass or urinal jug and intermittently failed to provide necessary adult diapers.

    b.  Pagan denied Phillips critically-needed blood-clot medication, periodic checks of possible blood clots in his legs, and cholesterol medication.

c. Pagan forced Phillips to wait hours to be seen by medical staff who never appeared, wait weeks for medical supplies that "ran out," and assessed him a medical co-pay to even request or check on overdue medical supplies.

d. Pagan failed to discipline staff that countermanded or ignored his orders, deprived Phillips of ointments, soaps, and medical wipes in retaliation for his grievances.

e. Pagan, Green, and Cobb denied Phillips an adequate supply of adult diapers, sanitary wipes, ointment, antiseptic soap, and fiber laxative which Phillips needed to manage the health dangers of his incontinence.

f. As a result of denial of hygiene supplies, Phillips is forced to wear urine-soaked diapers for long periods, resulting in breaches of his skin integrity that can allow infection from fecal bacteria and septic shock.

g. Pagan denied Phillips a needed bathroom (frequent urination) pass and forced to rely instead on an inadequate supply of adult diapers and other sanitation supplies that frequently "ran out."

h. Pagan denied Phillips doctors' visits for several weeks at a time resulting in his medication and other medical supplies running out.

i. Pagan cut Phillips Depends, forcing Phillips to remain in urine soaked diapers for extended periods of time, which created a bio-hazard issue.

j. Pagan, Green and Cobb forced Phillips to wait hours for medical appointments for which Pagan or other providers never showed up.

k. Cobb told Phillips that it was FDC policy to stab holes in his diapers.

l. In November, 2016 Nursing Director Green and Health Services Administrator Cobb refused to give Phillips a wheelchair to fit his size.

m. Defendant Green instructed Phillips to "stop writing grievances," and that Phillips would receive a wheel chair appropriate to his larger build. After Phillips complained that he did not receive the larger chair, Cort told him they weren't giving him a "big boy chair."

147. As a proximate result of Defendant's denial of care, Phillips has suffered

significant physical injury, mental distress, humiliation, and pain, and will

continue to suffer such injuries in the future unless relief is granted.

148. As it was necessary for Phillips to retain the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

### V. Failure to Treat under 42 U.S.C. § 1983 (Cort, Franklin, Gregory)

149. Phillips is entitled to relief against Defendants Linda Cort, Lucy Franklin, and LaBridia Gregory for failure to treat known serious medical conditions or interference with such needed treatment in violation of the Eighth Amendment to the U.S. Constitution, as further set out in Sections B-E of the Common Allegations, above, and including the following:

a. Cort has countermanded prescribed medical supplies.

b. Cort and Franklin have made Phillip wait several hours to see the doctor only to send him back to his dorm without receiving medical attention.

c. Medical staff force Phillips to pay medical co-pays just to request or check on medical supplies.

d. Cort countermanded or withheld Phillips' prescriptions, deprived him of ointments, soaps, and medical wipes in retaliation for his grievances and denied him reasonable ADA accommodations without fear of discipline.

e. Cort, Franklin, and Gregory denied Phillips an adequate supply of serviceable adult diapers and sometimes perforated the diapers making them unserviceable to retain urine and fecal material.

f. Gregory detained Phillips so he couldn't get his medication and then document the denial as a "refusal" of care by Phillips.

g. Gregory denied Phillips access to the shower to clean himself after an accident forcing him to remain in his own feces.

h. Cort denied Phillips sanitary wipes and told him to use toilet paper or a washcloth, which created another bio-hazard issue.

i. Cort denied Phillips Depends and sanitary wipes to force him to use a re-usable condom-type catheter that leaks urine, and that he was provided no means to sterilize when it becomes contaminated.

j. Cort bullied Phillips to sign a "refusal" of the catheter program which was worded to state he would no longer get Depends either.

k. Cort and Franklin ordered Phillips to wait in medical for hours only to discover he will not be seen, forcing him to soil his diaper and miss chow.

l. After Phillips was able to get a "wheel chair pusher" aide, Gregory would send his aide back to the dorm so Phillips also had to leave and miss chow.

m. Gregory has told Phillips that she will continue to interfere to prevent him from having the assistance of an aide because he is a "writ-writer."

n. Cort has denied Phillips a wheelchair aid despite his multiple requests and threatened to have him put in confinement if she saw another inmate pushing his wheelchair.

o. Gregory often denies Phillips access to the wheelchair accessible shower.

p. As a result of denial of hygiene supplies, Phillips is forced to wear urine-soaked diapers for long periods, resulting in breaches of his skin integrity that can allow infection from fecal bacteria and septic shock. As of May 2017 Phillips reported having permanent discoloring in his groin from the constant urine burns and bleeding rashes or sores.

150. As a proximate result of Defendant's denial of care, Phillips has suffered physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

151. As it was necessary for Phillips to retain the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## VI.     Failure to Accommodate under the ADA and Rehabilitation Act (Jones in her official capacity)

152.   Plaintiff is entitled to relief against Defendant Jones for violating Title II

(public entities) of the Americans with Disabilities Act, 42 U.S.C. § 12101 et

seq., (hereinafter "ADA") which provides in pertinent part:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

42 U.S.C. § 12132

153.   Title II of the Act prohibits, among other things:

limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

154.   Mr. Phillips is disabled as defined at 42 U.S.C. § 12102(2), as he suffers

physical impairments that substantially limit one or more major life activities.

155.   Phillips is a "qualified individual" as defined at 42 U.S.C. § 12131(2):

"Qualified Individual" means an individual with a disability who meets the

essential eligibility requirements for the receipt of services or the participation

in programs or activities provided by the entity (with or without regard to any

auxiliary aids or modifications).

156. Defendant FDC is a public entity that receives federal funds and thus also violates the Rehabilitation Act of 1974 (RA).

157. Defendants' prisons are facilities and their operations include programs and services under the meaning of the ADA and RA.

158. Defendant FDC authorized its agents and employees to act in its behalf when they committed the ADA/RA violations alleged herein.

159. Defendant FDC's agents and employees acted on behalf of FDC and within the course and scope of employment when they violated the ADA/RA.

160. Mr. Phillips's need for a reasonable accommodation in order to benefit from corrections programs and services was known and obvious.

161. Phillips has consistently complained about being denied accommodation under the ADA, which fact has engendered animus among FDC officials.

162. Secretary Jones has a non-delegable duty, through her agents and employees, to accommodate Mr. Phillips' needs for reasonable accommodations.

163. ADA inmates are extra trouble and it is a practice in FDC for security and administrative officials to make the lives of disabled inmates miserable.

164. Officials also use Phillips' disabilities as a way to continue to retaliate against him for his reputed status as a "writ-writer."

165. Phillips is wheel-chair bound because of a spine injury.

166. Phillips is also bladder and bowel incontinent which limits activities.

167. Defendant FDC, its agents and employees, acted with deliberate indifference, and discriminatory intent, to Plaintiff's need for reasonable accommodation as set out in the Common Allegations, Section A-E above, and as follows:

a. Phillips has had his ADA status intermittently revoked without cause.

b. Phillips has been placed in confinement as retaliation and was denied his hygiene supplies and intermittently denied an ADA compliant cell.

c. Phillips is intermittently deprived of adult diapers and other medical supplies which limit his ability to take part in meals and activities because he needs to return to the dorm to clean himself.

d. Phillips had his therapeutic boots, needed to extend mobility, taken from him when he was transferred from Mayo C.I. to Franklin C.I. and never replaced. Although Phillips had a pass for therapeutic boots, he was told by ADA Coordinator Cort that he would not be provided any new boots;

e. The Department of Corrections has an ADA Coordinator who permits individual institutions to deny reasonable accommodations at will.

f. Phillips was denied a wheel chair "pusher" aide by Cort and had to wheel himself long distances from dorm to medical to chow and elsewhere – without even gloves, so his fingers blistered and he eventually got arthritis;

g. After Phillips got a "wheel chair pusher," Officer Labridia Gregory would send his aide back to the dorm so Phillips had to leave and miss chow.

h. Gregory has flatly told Phillips she will continue to interfere to prevent him from having the assistance of an aide because he is a "writ-writer."

i. Gregory often denies Phillips access to the wheelchair accessible shower.

j. On April 30, 2016, Phillips was disciplined for letting someone push his wheelchair although, without help, he frequently has to miss chow.

k. Phillips' difficulty in propelling his wheelchair requires him to miss chow as movement becomes exhausting, putting him at risk for a heart attack.

l. Though new wheel chairs arrived September 17, 2016 Phillips was forced to use an old, broken and dangerous wheelchair for 4 months, to December 16, despite speaking with staff and filing many grievances.

m. In November, 2016 Nursing Director Green and Health Services Administrator Cobb refused to give Phillips a wheelchair to fit his size.

n. Defendant Green instructed Phillips to "stop writing grievances," and that Phillips would receive a wheel chair appropriate to his larger build.

o. After Phillips complained that he did not receive the larger chair, Cort told him they would not be giving him a "big boy chair."

p. On occasion, Cort has threatened to have him placed in confinement as a result of his complaints about failure to accommodate his disabilities.

q. ADA inmates are supposed to be allowed a portable privacy curtain which gives ADA inmates the same privacy as non-ADA inmates. Phillips is regularly denied shower curtains by officers who lock them away and wait out their shift so that they keep Phillips from receiving them.

r. Failing and intentionally refusing to train Defendant FDC employees regarding the Defendant FDC's obligation to provide disabled inmates with reasonable accommodations for their disability under the ADA.

168. As a proximate result of Defendant's denial of accommodation, Phillips has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

169. As it was necessary for Phillips to retain the undersigned attorney to represent him, Phillips is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Declaratory and Injunctive Relief as to Defendant Jones, as Secretary, and against Centurion of Florida, finding them in violation of the constitution and laws cited and requiring them to provide the care and accommodations to which Plaintiff is entitled as shown above;

B. compensatory damages as to Corizon, Centurion and the individual Defendants, Pagan, Green, Cobb, Franklin, Cort, and Gregory;

C. nominal damages where compensatory damages are limited by law;

D. punitive damages against the individual defendants;

E. reasonable attorney's fees and costs as provided by law;

F. trial by jury for those counts so triable; and

G. such other relief as the Court deems just and proper.

Respectfully Submitted,   *s/ James V. Cook*_____
                          JAMES V. COOK, ESQ.
                          Florida Bar Number 0966843
                          Law Office of James Cook
                          314 West Jefferson Street
                          Tallahassee, FL 32301
                          (850) 222-8080; 561-0836 fax
                          cookjv@gmail.com

                          Attorney for Plaintiff